## GRONN v. WOODRUFF and others.

*(District Court, S. D. New York.   January 8, 1884.)*

1. SHIPPING—ASSIGNMENT OF BILL OF LADING—CHARTER-PARTY.
    A merchant purchasing goods on board a vessel after arrival, and taking an assignment of the bill of lading, is bound by its terms, but not by the terms of the charter-party, any further than it is adopted by the bill of lading.
2. SAME—BILL OF LADING—DEMURRAGE—REASONABLE TIME.
    Where the bill of lading provides no stipulated days for the discharge, the merchant is bound only to reasonable diligence, according to the custom of the port.

3. SAME—REMOVAL OF VESSEL FROM BERTH.

   Where a merchant procures the removal of a vessel from a berth already se-
   cured to another, for his own benefit, pays the cost of removal, and procures the
   cargo to be discharged within the average time allowed by the custom of the
   port from the day when she was first ready to discharge, *held*, no demurrage
   can be claimed.

In Admiralty.

*Butler, Stillman & Hubbard,* for libelant.

*Beebe, Wilcox & Hobbs,* for respondents.

BROWN, J. The bark Spess arrived at New York on January 3,
1881, with 265 tons of salt in ballast from Lisbon, upon a bill of
lading which was transferred to the respondents. They entered the
salt at the custom-house, paid the freight, and directed the vessel to
Atlantic docks, where the vessel arrived on January 4th, and gave
notice of her readiness to discharge on the 5th. On that day, at the
respondents' request, the master consented to go to Twenty-third
street and unload, where she was taken at the respondents' expense,
and arrived at about 4 P. M. One wagon load was delivered on the
evening of the 6th, and the discharge was ended early on the 15th,
and might have been completed had the ship desired on the evening
of the 14th. The bill of lading provided no stipulated days for the
discharge, and it referred to the charter-party only as regards the
payment of freight. The provisions of the charty-party, therefore,
as respects the rate of delivery, did not bind the respondents.
*112 Sticks of Timber,* 8 Ben. 214; *Kerford* v. *Mondel,* 5 Hurl. & N.
Exch. 931. It was proved that 1,000 bushels, or 33 tons, per day was
a reasonable and customary rate of discharge. This would leave eight
working days for the discharge of this cargo.

Although the vessel had given notice that she would be ready to
discharge on the 5th, I think the evidence shows that she did not get
a permit, or tubs, and did not get ready, so that she could actually
commence the discharge, before the 6th; and it does not appear that
the removal from Atlantic docks to Twenty-third street, which occu-
pied only some three hours, made any difference in her want of prep-
aration. But even if the vessel had been ready upon the 5th, de-
ducting Sunday, and the rainy days in the mean time, only eight
working days were consumed in the discharge. Although on several
of the working days considerably more than 33 tons per day were in
fact discharged, I think the merchant cannot be held liable, in the
absence of any stipulated lay days or agreement for dispatch, pro-
vided he gets the whole cargo discharged within the time which cus-
tom allows. As this time was not exceeded, the libel must be dis-
missed, with costs.